IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVON PEARSON, #348816          *
   Petitioner,
 v.                       *   CIVIL ACTION NO. CCB-10-3345

BOBBY SHEARIN, et al.,          *
   Respondents.
         ***

## MEMORANDUM

Now before the court is a petition for habeas corpus relief filed by Davon Pearson (ECF No. 1), respondents' answer thereto and petitioner's reply. ECF Nos. 8 & 13. After review of these documents, the court finds no need for an evidentiary hearing. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts. For the reasons to follow, the petition will be denied and dismissed with prejudice.

## Factual and Procedural History

Petitioner was charged in the Circuit Court for Baltimore City with murder and related offenses. He was tried before a jury, the Honorable Kaye Allison presiding, on December 5-10, 2007. The facts developed at trial as recounted by the Court of Appeals of Maryland follow:

> Shortly after midnight on August 3, 2006, Howard Tavon Jones was shot and killed on the 2600 block of Dulany Street in Baltimore City. Appellant was charged with the shooting. At trial, Agent Joseph Carpenter of the Baltimore City Police Department testified that he arrived on the scene and observed Jones's body lying on the street. Agent Carpenter and other officers then canvassed the area for witnesses.
>
> Shantay Stokes, a resident of the neighborhood, testified that immediately prior to the shooting, she was walking with her boyfriend's son on East Lynn Avenue, toward Dulany Street, when she saw Pearson, whom she knew as "Randolph," across the street with a male she knew as "Bobby." Stokes watched these two men cover their faces with their T-shirts. She then saw Bobby hand Pearson a

1

handgun. According to Stokes, Pearson then "ran up behind Tavon and started shooting him."

On August 21, 2007, Stokes was contacted by officers from the homicide unit and escorted to the police station for an interview. Stokes gave a taped statement and was shown a photographic array from which she selected pictures of Pearson and "Bobby." On the back of Pearson's photograph, she wrote: "I Shantay Stokes, witnessed Bobby give Randolph the gun to shoot and kill Ta."[1] At trial, Stokes testified emphatically that she was "[a] hundred percent positive" that Pearson was the shooter.

Dione Rodman testified that, prior to the shooting, she had been sitting on her front steps with four individuals: Tavon, a man she knew as "Nephew," a man named "Al," and her cousin "Lish." Rodman indicated that Tavon told her that he was going to Dulany Street to purchase a bag of weed. Rodman heard gunshots a few minutes later. Rodman testified that she saw Pearson running from Dulany Street onto East Lynn Street, holding a black automatic handgun. Rodman went to the police station, provided a taped statement, and selected Pearson from a photographic array.

Terry Mackall, an inmate from the Baltimore City Detention Center, testified that he contacted the State's Attorney's Office, claiming that he had obtained information regarding a murder. According to Mackall, Pearson had approached him in jail to talk about his case because of Mackall's reputation as being knowledgeable about the law. Pearson told Mackall that he "made a deal" with Bobby whereby Bobby would give Pearson cocaine in exchange for Pearson's shooting the victim.

For the defense, Pearson's cousin, Tameka Hicks; Pearson's mother, Alma Tucker; and his girlfriend, Tiffany Edwards, all testified that at approximately 7:30 p.m. on August 2nd, they attended a neighborhood candlelight vigil with Pearson and thirty to fifty other people for an individual named "Tony" who had been slain. According to Hicks, the vigil lasted for "three to four hours." Edwards testified that she and Pearson left the vigil around 10:00 p.m., arrived at Edwards's home a few minutes later, and remained there all night.

Pearson took the stand in his own defense. He testified that on the night of the shooting, he attended the vigil and then went to Edwards's house. Pearson maintained that he did not know Tavon Jones and that no one ever paid him to do anything to Jones.

---

[1] Stokes referred to Tavon as "Ta."

ECF No. 8, Ex. 10, pp. 1-3.

Petitioner was convicted of second degree murder, conspiracy to murder, and unlawful use of a handgun. *Id.*, Ex. 5, pp. 53-56. He was sentenced, on February 5, 2008, to a life term of imprisonment for conspiracy to commit murder, a thirty year concurrent term of incarceration for second degree murder, and a consecutive twenty year term for the handgun offense. *Id.*

Petitioner noted a timely appeal wherein he raised the following claims:

> 1. Did the trial judge err in sentencing appellant to life for conspiracy to commit first degree murder when the instructions propounded and the verdict sheet set forth the offense of "conspiracy to murder" and thus presented a situation where the jury could have found Appellant guilty of conspiracy to commit second degree murder?
>
> 2. Where there is an ambiguity as to which of two concurrent sentences a third sentence should run consecutive to, did the trial court err in running the third sentence consecutive to the longer of the two?

*Id.*, Ex. 8, p. 2.

Petitioner's convictions were affirmed in an unreported opinion filed on May 24, 2010. *Id.*, Ex. 10. He raised the same claims by way of petition for writ of certiorari filed in the Court of Appeals of Maryland. *Id.*, Exs. 11 & 12. On September 20, 2010, the Maryland Court of Appeals declined to hear petitioner's case. *Id.*, Ex. 13. Petitioner has not instituted state post-conviction proceedings. *Id.*, Ex. 1.

In the instant petition, petitioner maintains that his sentence was improper because the instructions to the jury were confusing. He further maintains that his sentence on the handgun offense should run consecutive to his thirty year sentence for second degree murder rather than to his life sentence for conspiracy to murder. ECF No. 1.

## Threshold Considerations

### Timeliness & Exhaustion of State Remedies

3

Case 1:10-cv-03345-CCB   Document 14   Filed 12/15/11   Page 4 of 12

Respondents do not contend, and the court does not find, that the petition was filed outside the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1). Further, petitioner's claims have been properly exhausted through his direct appeal process despite petitioner's not having instituted collateral review in the state court. Accordingly, his claims are exhausted for the purpose of federal habeas corpus review.

**Standard of Review for Petitioner's Remaining Claim**

Pursuant to statute, a federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits:

1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is "contrary to" Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).[1] Section 2254(d) also requires federal courts to give great deference to a

---

[1] Although § 2254(d) is a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), "which demands that state court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam), a state court decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-413 (2000). A state court decision is based on an "unreasonable application" of clearly established federal law when "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). A federal district court may not issue the writ simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly; rather, the state court application must be objectively unreasonable. *See Renico v. Lett*, 130 S.Ct.1855, 1862 (2010); *Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

4

state court's factual findings. *See Lenz v. Washington,* 444 F. 3d 295, 299 (4th Cir. 2006). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct absent clear and convincing evidence to the contrary. The applicant has the burden of rebutting the presumption of correctness. A decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding. *See Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). In sum, § 2254(d) imposes a "highly deferential standard for evaluating state-court rulings" and "demands that the state-court decisions be given the benefit of the doubt." *See Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). With these standards in mind, the court will address the merits of petitioner's claims.

  A.  Claim that petitioner should not serve a life sentence for conspiracy to murder

Petitioner alleges that he was wrongfully sentenced for conspiracy to commit first degree murder. ECF No. 1. He states that given the jury instructions and verdict sheet, the jury intended to convict him for conspiring to commit a lesser degree of murder.[2] In dismissing this claim, the Court of Special Appeals held:

> Pearson contends that the trial court "erred in sentencing [him] to life in prison for conspiracy to commit first degree murder when the instructions propounded and verdict sheet set forth the offense of 'conspiracy to murder.' He contends that he could only have been found guilty of conspiracy to commit second degree murder because "the court instructed the jury on both first and second degree murder, and the jury convicted [him] of 'conspiracy to murder,' without specifying the degree[.]" Pearson argues that the court's life sentence for conspiracy to commit

---

[2] Any separate claim that the jury was improperly instructed, the verdict sheet was improperly prepared, or that the verdict was inconsistent other than what was presented by petitioner in his appeal, has been waived in that the issues have not been properly preserved. No objections to the jury instructions or verdict sheet were made during trial and no others issues other than the sentencing issue was presented on appeal.

first degree murder "violated the rule of lenity." *See Robinson v. Lee*, 317 Md. 371, 379-80 (1989) ("Fundamental fairness dictates that the defendant understand clearly what debt he must pay to society for his transgressions. If there is doubt as to the penalty, then the law directs that his punishment must be construed to favor a milder penalty over a harsher one."). Moreover, citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he argues that the court's sentence "violated his due process right to have every fact material to his guilt decided by the jury."

In its jury instructions, the court first told the jury that "[t]he Defendant is charged with the crime of murder. The charge includes first degree murder and second degree murder." In its instruction for second degree murder, the court stated that "[s]econd degree is the killing of the other person with either the intent to kill or the intent to inflict such serious bodily harm that death would be the likely result." On the conspiracy count, the court instructed the jury as follows:

> The Defendant is also charged with the crime of conspiracy to commit murder. Conspiracy is an agreement between two or more persons to commit a crime. In order to convict the Defendant of conspiracy, the State must prove the following: That the Defendant entered into an agreement with at least one other person to commit the crime of murder and that the Defendant entered into the agreement with the intent that murder would be committed.

Pearson asserts that "[t]he natural interpretation of these two instructions permitted the jury to find [him] guilty of 'conspiracy to murder' so long as they found that he entered into an agreement to commit murder *either* in the first or second degree." The jury found Pearson not guilty of first degree murder, but convicted him of second degree murder and "conspiracy to commit murder." Pearson contends that the court then "erroneously interpreted the latter verdict as being the crime of conspiracy to commit first degree murder and sentenced [him] to a term of life imprisonment."

The Court of Appeals's recent decision in *Alston v. State*, No. 129, Sept. Term, 2007, ___ Md. ___ (May 11, 2010)[3] disposes of Pearson's contention. There, the Court rejected the very argument now advanced by Pearson, holding that under Maryland law, there is no such crime as conspiracy to commit second degree murder. *Id.* at ___ (slip op. at 25). In *Alston*, the petitioner challenged his life sentence for "conspiracy to murder" on the ground that, under the instructions given, the jury could have found him guilty of conspiracy to commit second degree murder. Specifically, the petitioner argued that the jury could have found that he conspired to commit second degree murder of the type based on an intent to inflict bodily harm.

---
[3] *Alston v. State*, 994 A.2d 896 (Md. 2010).

As an initial matter, the *Alston* Court examined *Mitchell v. State*, 363 Md. 130 (2001), which held "that there was no such crime . . . as conspiracy to commit second degree murder based upon an intent to kill but without deliberation and premeditation." *Alston*, ___ Md. ___(slip op. at 21). Recognizing that *Mitchell* "did not decide whether there could be a conspiracy to commit other types of second degree murder[,]" the *Alston* Court then clarified that there is no such thing as a conspiracy to commit second degree murder of the intent-to-inflict-grievous-bodily-harm variety because this form of murder "does not involve an intent to kill." *Id.* at ___ (slip op. at 21, 25). The Court observed that to be found guilty of conspiracy, a defendant "must have a specific intent to commit the offense which is the object of the conspiracy." *Id.* at ___ (slip op. at 23). The Court then reasoned that because an "intent to murder . . . means an intent to kill with malice[,]" and a "conspiracy to murder means a malicious intent to kill with deliberation and premeditation," "a charge of conspiracy to murder logically excludes second degree murder based upon an intent to inflict grievous bodily harm." *Id.* at ___ (slip op. at 25). The Court concluded that the jury could not have found petitioner guilty of a conspiracy to commit second degree murder and upheld the life sentence imposed. *Id.* at ___ (slip op. at 27).

For the same reasons set forth in *Alston*, we reject Pearson's argument here. Pearson was charged with conspiracy to murder and the jury was instructed properly. When the jury returned its conspiracy to murder verdict, it could only have been a verdict that Pearson was guilty of conspiracy to commit first degree murder. Because there was no ambiguity, the rule of lenity was not applicable.

We reject, moreover, Pearson's contention that his life sentence violated his due process rights. In *Alston*, the Court of Appeals did not address *Apprendi*, 530 U.S. at 476-77, the case upon which Pearson relies. But this Court rejected the same *Apprendi* argument now advanced by Pearson. *See Alston v. State*, 177 Md. App. 1, 36-37 (2007), *aff'd*, No. 129, Sept. Term, 2007, ___ Md. ___ (May 11, 2010). As Pearson argues here, *Alston* asserted

> that due process required a jury to determine every element of the crime of conspiracy to commit first degree murder in order for a judge to impose a life sentence. . . . [B]ecause the jury could have been rendering a verdict for conspiracy to commit second degree murder, the circuit court violated the mandate of *Apprendi* when it sentenced him to life in prison, a sentence exceeding the statutory maximum for conspiracy to commit second degree murder.

*Id.* at 36. We disagreed, concluding that *Apprendi* was inapplicable because it dealt with an enhanced sentencing statute:

7

> In *Apprendi*, the Supreme Court "held that a state hate crime statute, which authorized an increase in the maximum prison sentence based on a judge's finding [rather than the jury's] that the defendant acted with the purpose to intimidate because of race, violated the due process clause of the Fourteenth Amendment[.]" *Commonwealth v. Velazquez*, 61 Mass. App. Ct. 667, 814 N.E.2d 356, 360 n.4 (Mass. App. Ct. 2004).
>
> In *Velazquez*, a Massachusetts court was presented with a challenge, similar to Alston's, that the court violated the defendant's *Apprendi* rights when the court erroneously instructed the jury on the offense of armed assault with intent to murder, the jury convicted the defendant of the offense based on the erroneous instruction, and the court imposed a sentence based upon the jury's verdict. *See Velazquez*, 814 N.E.2d at 359-60. The *Velazquez* court held *Apprendi* to be inapplicable, "because the statute under which the defendant was convicted does not provide for an enhanced sentence beyond the statutory maximum[.]" *Id.* at 360 n.4. As in *Velazquez*, *Apprendi* is not applicable here, because *Alston* was not given an enhanced sentence beyond that statutorily called for in the case of conspiracy to commit first degree murder. Although the principle that the jury must find all the facts necessary to satisfy the elements of the crime is similar to the principle underlying *Apprendi*, we do not see this as an *Apprendi* case.

> *Id.* at 37-38 (footnote omitted). In any event, the jury, here, could not have been rendering a verdict for conspiracy to commit second degree murder because there is no such offense and it was instructed properly. Accordingly, the trial court lawfully sentenced Pearson to life in prison.

ECF No. 8, Ex. 10, pp. 4-9.

A criminal defendant is entitled under the Due Process Clause to "a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." *Apprendi v. New Jersey,* 530 U.S. 466, 476-77 (2000) (alteration in original) (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)). In *Apprendi,* the Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490.

8

Petitioner maintains that in order for the sentencing court to impose a life sentence, due process required the jury to determine each element of the crime of conspiracy to commit first degree murder. While petitioner does not specifically advance his argument before this court, his argument before the Maryland Court of Special Appeals was that because the jury could have returned a verdict for conspiracy to commit second degree murder, *Apprendi* and the due process clause were violated by his being sentenced to a life term, a term in excess of the statutory maximum under Maryland law for conspiracy to commit second degree murder. *See* Md. Code Ann., Crim. Law § 2-204(b) (penalty for second degree murder is imprisonment not exceeding 30 years).

  The state court's rejection of petitioner's claim is supported by the record. This court finds that the state court's factual determinations relative to the jury instructions are supported by the record. Moreover, the state court's legal conclusions are not contrary to clearly established federal law nor an unreasonable application of Supreme Court precedent. Consequently, the undersigned finds that the Court of Special Appeals's conclusions regarding the trial court's instructions to the jury are neither contrary to nor an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence. *See* 28 U.S.C. § 2254(d). Petitioner was sentenced within the penalties available under Maryland law for the offenses charged. The jury returned a verdict of conspiracy to commit murder and second degree murder. As there can be no conspiracy to commit second degree murder under Maryland law, the sentencing judge did not err in finding the jury convicted petitioner of conspiracy to commit first degree murder and sentencing him accordingly. He was not subject to an enhancement to his sentence. Moreover, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the

Constitution, laws, or treaties of the United States." *See Estelle v. McGuire*, 502 U.S. 62, 67- 68 (1991). As petitioner received all the process he was due, he is not entitled to relief.

      b.      Claim that trial court improperly imposed consecutive sentences:

In denying this claim, the Court of Appeals stated:

Pearson asserts that the "trial court erred by making [his] sentence for use of a handgun consecutive to two concurrent sentences of different lengths." At Pearson's sentencing, the trial court ruled as follows:

> It is the sentence of this Court on the charge of conspiracy to commit murder that you be sentenced to a period of incarceration of life. On the charge of murder in the second degree, Mr. Pearson, you are sentenced . . . for a period of incarceration of 30 years. The sentence on murder of second degree is to run concurrent to the sentence on conspiracy.
>
> On the charge of use of a handgun in a crime of violence, you are sentenced to a period of incarceration of 20 years. The sentence on use of a handgun in a crime of violence is to run consecutive to the sentence for conspiracy and consecutive to the sentence for murder in the second degree.
>
> And then all of these sentences are to run consecutive to any outstanding unserved Maryland sentence. It is my intent that you serve a sentence of life plus twenty years.

Pearson contends that the trial court created a sentencing ambiguity "by expressly stating on the one hand that the sentence for the use of a handgun offense was to be consecutive to the murder in the second degree (30 year sentence), and on the other hand, stating that the total sentence was to be 'life plus twenty,' thereby rendering the sentence for the handgun offense consecutive to the conspiracy to murder sentence (life incarceration)." He argues that because of this ambiguity, we must apply the rule of lenity and interpret the twenty year sentence as running consecutive to the thirty year second degree murder penalty. We do not perceive an ambiguity in Pearson's sentence. The trial court initially stated that Pearson's twenty year sentence for the handgun offense would run consecutively to both the life and thirty year sentence. But the court clarified any ambiguity when it stated its intention that Pearson "serve a sentence of life plus twenty years." From this, it is clear that the court did not err in sentencing Pearson to serve, for the handgun offense, twenty years' incarceration consecutive to Pearson's life sentence for conspiracy to commit murder.

ECF No. 8, Ex. 10, p. 9-10.

The appellate court's factual findings are supported by the record. The sentencing transcript indicates that petitioner was sentenced to life imprisonment for the conspiracy to commit murder, a concurrent thirty year term for second degree murder, and a twenty year consecutive term for use of a handgun. ECF No. 8, Ex. 8. Initially, the sentencing court indicated that the twenty year term was to run consecutive to both the life and thirty year sentences. She then clarified and summarized that petitioner was sentenced to life plus twenty years. As such, there was no ambiguity in petitioner's sentencing.

To the extent that the court's ruling pertains to Maryland law as it relates to sentencing provisions and jurisdiction in criminal cases, it is not the role of this court to second guess those conclusions. *See Rose v. Hodges*, 423 U.S. 19, 21–22 (1975). Sentencing decisions by state courts are not subject to federal review unless the sentence violates a constitutionally protected right. *Makal v. Arizona*, 544 F.2d 1030, 1035 (9th Cir. 1976); *see also Wright v. Maryland Penitentiary*, 429 F.2d 1101, 1103 (4th Cir. 1970) (noting it is "well established that sentences within state statutory limits present no federal question"). The findings of the Court of Special Appeals are objectively reasonable, given the arguments advanced on appeal as well as the sentencing court's clarification as to her intentions as to petitioner's total sentence. As such, the appellate court's finding will be deemed presumptively correct, pursuant to 28 U.S.C. §2254(d) and (e).

## Conclusion

The instant petition for habeas corpus relief will be denied and this case dismissed by separate order. When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."

11

28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (internal quotation marks and citations omitted). Petitioner does not satisfy this standard, and the court declines to issue a certificate of appealability.


Date:   December 15, 2011                     /s/
                                       Catherine C. Blake
                                       United States District Judge